IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON  DIVISION

| | | |
|---|---|---|
| Anthony L. Washington and Malcolm Crosland, Esq. | ) ) ) | Civil Action No.  2:13-393-RMG-BHH |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) ) | **ORDER AND REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| SSA Cooper, LLC; Homeport Insurance Company; and Daniel A. Sarno, Jr., District Chief Administrative Law Judge, The United States Department of Labor and Office of Administrative Law Judges, | ) ) ) ) ) | |
| Defendants. | | |

This matter is before the Court on the defendants' motions to dismiss pursuant to
Federal Rule of Civil Procedure 12(b)(1) & (6) [Doc. 19, 28], requesting that the
plaintiffs'[1] entire case be dismissed.  The plaintiff has pled claims for a declaratory
judgment, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201-02, and for a
writ of mandamus relief, pursuant to the All Writs Act, 28 U.S.C. § 1651(a).  The plaintiff
contends that Defendant Daniel A. Sarno, Jr., District Chief Administrative Law Judge
(ALJ), issued a series of administrative orders, in the context of the plaintiff's underlying
claim, pursuant to the Longshore Harbor Workers' Compensation Act, (LHWCA), 33
U.S.C. § 901 *et seq*., which exceeded his authority and which amounted to a sanction
against the plaintiff, in violation of 33 U.S.C. § 927.

---

[1]  As the underlying claimant, the Court will refer to Plaintiff Washington, in the singular, as "the plaintiff," throughout.

As a matter of initial housekeeping, the Court would address the plaintiff's argument that Defendant Sarno, is a nominal party and has no standing to move for dismissal of this case, here, which seeks mandamus relief against him. *See General Tire & Rubber Co. v. Watkins*, 363 F.2d 87, 88 (4th Cir. 1966). The plaintiff asks that Defendant Sarno's motion [Doc. 19] be struck. The Court thinks the issue is immaterial. First, the other defendants have independently moved, echoing Defendant Sarno's arguments or specifically incorporating them by reference; such arguments are all properly before the Court, therefore, regardless of how originally advanced. Second, precisely because the arguments at issue are not somehow unique to the parties advancing them but generally available to assail the quality of the plaintiff's presence here in federal court, their source seems irrelevant. At worst, Defendant Sarno's motion is in the nature of an amicus.

Even as the plaintiff is likely right about his characterization of Defendant Sarno, the Court would not recommend striking the motion. It would not seem to affect the outcome of the Court's analysis either way, as the second motion of the defendants [Doc. 28] implicates all relevant considerations.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters involving *pro se* litigants are referred to a United States Magistrate Judge for consideration.

## BACKGROUND

As a result of an employment related injury, on or about December 2, 2009, the plaintiff Anthony Washington filed a claim for disability compensation, under the Longshore and Harbor Workers' Compensation Act, against his employer (defendant SSA Cooper) and its insurer (defendant Homeport Insurance Co.).

The case was transferred to the Department of Labor's Office of Administrative Law Judges and set for a hearing on October 31, 2011. (Compl. Ex. 1.) On August 5, 2011, defendant Daniel A. Sarno, Jr., the Chief ALJ, in *Pre-Hearing Order No. 2*, required the plaintiff to sign a medical release form for his medical records. *Id*. In response to a motion from the plaintiff's counsel (Plaintiff Malcolm Crosland), the ALJ clarified, in *Pre-Hearing Order No. 3*, that "Employer's Counsel is given unfettered access to all of Claimant's medical records as well as unfettered access and communication with Claimant's treating physician." (Compl. Ex. 2.)

The plaintiff attempted to appeal these Orders to the Department of Labor Benefits Review Board (BRB), but on October 25, 2011, the Board dismissed the appeal. (Compl. Ex. 3.) The Board reasoned that both Orders were interlocutory and did not meet the Board's test for accepting an interlocutory appeal. *Id*. The BRB also concluded that the case did not require the Board to direct the course of the adjudicatory process. *Id*. After the BRB's decision, the plaintiff filed a motion for reconsideration, arguing that the Chief ALJ's orders violated the plaintiff's rights to medical privacy. (Compl. Ex. 4 at 1.) The plaintiff also argued that the orders violated

3

the Health Insurance Portability and Accountability Act (HIPAA) and that the ALJ erred by not considering less intrusive alternatives for giving Defendant SSA Cooper access to his medical information. *Id*.

On February 15, 2012, the BRB denied the motion for reconsideration. *Id*. The Board reasoned, in relevant part, that upon application by a party, an ALJ may issue a protective order, and noted that the plaintiffs assertions regarding HIPAA and less intrusive alternatives could be addressed by Judge Sarno. *Id*. at 2 & n.1. The plaintiff appealed the BRB's decision to the Fourth Circuit, but then voluntarily asked that the appeals court to dismiss the appeal. (Compl. Ex. 5.) On May 22, 2012, the Fourth Circuit granted the motion. *Id*. While the plaintiff's appeal was pending before the BRB, Defendant SSA Cooper asked Judge Sarno to cancel a scheduled October 31, 2011 hearing and continue the matter until further notice. (Compl. Ex. 6.)

On September 14, 2011, Judge Sarno granted the motion. (Compl. Ex. 6.) The judge found that "[i]t appears that [Washington] may be incarcerated and the parties are unable to take his deposition." *Id*. at 1. The judge also noted that the plaintiff had not complied with the judge's Pre-Hearing Orders Nos. 2 and 3 and that the plaintiff's attorney had apparently "filed an improper direct appeal" to the BRB. *Id*. Accordingly, Judge Sarno canceled the hearing. But, because Judge Sarno believed that the case was "at a standstill" and could not go forward until the plaintiff complied with Pre-Hearing Orders Nos. 2 and 3, in *Pre-Hearing Order No. 4*, he remanded the case "to the District Director until such time as the parties notify the District Director that: 1)

4

Claimant's deposition has been taken; and 2) Claimant and his attorney have complied with my pre-hearing Orders #2 and #3." *(*Comp. Ex. 6 at 1-2.)

The plaintiff did not appeal Judge Sarno's Pre-Hearing Order No. 4 to the BRB. In June 2012, after the Fourth Circuit dismissed the plaintiff's appeal from the BRB's October 2001 order, Defendants SSA Cooper and Homeport filed a motion with Judge Sarno seeking dismissal of the plaintiff's claim because the plaintiff had failed or refused to comply with Pre-Hearing Orders Nos. 2, 3, and 4.   (Compl. Ex. 7.)   The plaintiff opposed the motion, arguing that Judge Sarno lacked authority to remand the case as a sanction for non-compliance with discovery orders.  (Compl. Ex. 8.)  Instead, the plaintiff argued that Judge Sarno could certify the facts to the appropriate district court under section 27(b) of the LHWCA, 33 U.S.C. § 927(b).  *Id*. at 1-2.  Section 27(b) allows a district court to deem non-compliance or disobedience of certain administrative orders as a contempt of court. 33 U.S.C. § 927(b).

The plaintiff also filed a separate motion to vacate Pre-Hearing Orders Nos. 2, 3, and 4 and asked Judge Sarno to enter a qualified protective order that complied with the plaintiff's view of HIPAA's requirements. (Compl. Ex. 9.)  SSA Cooper and Homeport responded to the plaintiff's filings by asking Judge Sarno to have a district court consider sanctions, including dismissal, under section 27(b), and proposed facts that the judge should certify. (Compl. Ex. 10.)   Defendants SSA Cooper and Homeport opposed the plaintiff's motion to vacate Pre-Hearing Orders Nos. 2, 3, and 4, arguing that the plaintiff's HIPAA argument was untimely.  (Compl. Ex. 11.)

In July 2012, Judge Sarno responded to these filings by noting that it appeared to him that one of the parties must have appealed to the Fourth Circuit from the BRBs order dismissing the plaintiff's interlocutory appeal, although he had not been made privy to the particulars of the appeal.  (Compl. Ex. 12 at 1, n.1.) Judge Sarno concluded that he no longer had jurisdiction to rule on the parties' motion but would regain jurisdiction if the Fourth Circuit remanded the case through the BRB back to him. *Id.* at 2. Judge Sarno instructed the parties that they would not be permitted to file motions until the case was remanded and that motions submitted while the case was on appeal would not be ruled on. *Id*.

The case file was not sent to Judge Sarno, until November 2012.  (See Compl. ¶ 5(d).  On February 13, 2013, the plaintiff and his attorney filed this action against Judge Sarno, SSA Cooper, and Homewood. They ask this Court to grant a declaratory judgment allowing them to proceed on the plaintiff's disability claim without complying with Judge Sarno's orders and to declare those orders contrary to law. (Compl. ¶ 1(a).) They also ask for a writ of mandamus compelling Judge Sarno to act promptly on the motions pending before him, to certify to a district court the facts concerning the plaintiff's failure to provide a medical release, and to proceed toward adjudication of Washington's compensation claim.  *Id*. ¶ 1(b).

## APPLICABLE LAW

### MOTION TO DISMISS STANDARDS

Dismissal under Federal Rule of Civil Procedure 12(b)(1) examines whether the

complaint fails to state facts upon which jurisdiction can be founded. It is the plaintiff's burden to prove jurisdiction, and the court is to "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir.1991).

To resolve a jurisdictional challenge under Rule 12(b)(1), the Court may consider undisputed facts and any jurisdictional facts that it determines. The Court may dismiss a case for lack of subject matter jurisdiction on any of the following bases: "'(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Johnson v. United States*, 534 F.3d 958, 962 (8th Cir. 2008) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.1981)).

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief.  In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff.  *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)(citations omitted).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must state "a plausible claim for relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Stated differently, "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. (quoting Fed. R. Civ. P. 8(a)).

## **DISCUSSION**

Although the Court cannot, for certain, adamantly say why, it is fairly clear that this case cannot continue here. The defendants pose two main objections to the presence of this case in federal district court, one in jurisdiction and one in exhaustion. Firstly, they would contend that the Longshore and Harbor Workers' Compensation Act (LHWCA) provides a specific appeal procedure for compensation claims, which does not include judicial review by district courts and, thus, this Court has no jurisdiction. *See* 33 U.S.C. § 921(c). Secondly, they would contend even if somehow jurisdiction exists the plaintiff failed to exhaust his administrative remedies by appealing the relevant order to the Benefits Review Board (BRB) ahead of filing this present Complaint.

The Court is principally compelled by the jurisdictional argument and believes that the exhaustion rationale would not carry the day. The undersigned will consider both bases, to show its work so to speak, ultimately concluding that the case should be dismissed.

8

I.    **Subject Matter Jurisdiction**

The defendants argue, in part, that compensation claims under the LHWCA are adjudicated in the first instance before Administrative Law Judges (ALJs); appealed administratively to the Benefits Review Board (BRB) in the Department of Labor; and then reviewable only in the circuit courts of appeals.  *See* 33 U.S.C. § 921.  The Act states that this statutory procedure for challenging *compensation awards* (including denials of an award) is exclusive.  *See* 33 U.S.C. § 921(e).  The defendants argue by extension, therefore, that an appeal or review of any of the ALJ's prehearing orders, to or by this Court, is without jurisdiction because Section 921 does not contemplate any role for district courts in that process.

It is true that when a statute specifies a procedure for obtaining judicial review of a federal agency's actions, that procedure normally is exclusive, even if the statute does not say that the procedure is exclusive (although here it does).   *See Thunder Basin Coal Co. v. Reich*, 114 S.Ct. 771, 776 (1994); *Whitney National Bank v. Bank of New Orleans & Trust Co.*, 379 U.S. 411, 420 (1965).   But, here, there are three specific statutory bases for federal jurisdiction under the LHWCA, including Section 921, as advanced by the defendants. *See A-Z Intern. v. Phillips*, 323 F.3d 1141, 1145 (9th Cir. 2003).  First, under Section 918(a) of the LHWCA, district courts have jurisdiction to enter judgment on an administrative supplementary order that declares the amount of default by an employer in a compensation award. *See* 33 U.S.C. § 918(a). Second, under Section 921(d), as outlined above, district courts have jurisdiction to enforce any

9

order awarding workers' compensation.  *See* 33 U.S.C. § 921(d).  And, finally, under Section 927(b), federal "district courts may punish as contempt of court any disobedience or resistance to a lawful order or process issued in the course of administrative procedures under [LHWCA]."  *See* 33 U.S.C. § 927(b).

The defendants have generally emphasized Section 921, to the exclusion of the others, in order to say that the Court has no jurisdiction under the whole statute and that the plaintiff's case can only be appealed to the circuit court of appeals, if at all.   But, the plaintiff would not be required to employ the procedure outlined in Section 921 because the lawsuit he brought into federal court is not the appeal of any administrative decision that is related to a "compensation claim," as specifically contemplated by that section. *See Maxon Marine, Inc. v. Director, Office of Workers' Compensation Programs*, 39 F.3d 144, 146 (7th Cir. 1994).  Rather, as described above, the plaintiff is challenging the procedural order of the ALJ, to remand the case back to the District Director, as a kind of improper sanction.  (See Compl. at 8-9.)  More specifically, the plaintiff contends that, in Pre-Hearing Orders Nos. 2-4, the ALJ unlawfully required him to release all of his medical information to the defendants.  *Id.* at 8.   When the plaintiff refused and subsequently appealed such orders, the ALJ is alleged to have put the administrative case in a kind of procedural "limbo" by remanding the claim to the District Director until such time as the plaintiff complied with the orders to produce his medical information. [Doc. 1-1 at 34-35.]   There has, however, been no compensation decision, award or denial, in the administrative process.  So, the plaintiff would not have been obligated to

10

employ the appeal procedure demanded by the defendants pursuant to Section 921, and described above. *See id*. It is not statute upon which jurisdiction could be denied or withheld in this case.

At the same time, though, the plaintiff must, of course, establish *some* source of subject matter jurisdiction to be in this Court. The plaintiff does not argue Sections 918 or 921. Rather, in his Complaint and now on motions' argument, he alleges that this declaratory judgment action is properly before the district court pursuant to Section 927. (Compl. at 1.)

Section 27(b) of the LHWCA, states, in full:

> If any person in proceedings before a deputy commissioner or Board disobeys or resists any lawful order or process, or misbehaves during a hearing or so near the place thereof as to obstruct the same, or neglects to produce, after having been ordered to do so, any pertinent book, paper, or document, or refuses to appear after having been subpoenaed, or upon appearing refuses to take the oath as a witness, or after having taken the oath refuses to be examined according to law, **the deputy commissioner or Board shall certify the facts to the district court having jurisdiction in the place in which he is sitting (or to the United States District Court for the District of Columbia if he is sitting in such District) which shall thereupon in a summary manner hear the evidence as to the acts complained of, and if the evidence so warrants, punish such person in the same manner and to the same extent as for a contempt committed before the court**, or commit such person upon the same conditions as if the doing of the forbidden act had occurred with reference to the process of or in the presence of the court.

33 U.S.C. § 927(b) (emphasis added)

In sum, the district court's role under section 927(b), therefore, is to determine

11

whether to hold a person in contempt for disobeying an administrative order, including an order of an ALJ. *See A-Z Int'l*, 179 F.3d at 1191.  So, in this case, where the plaintiff refused to obey Pre-Hearing Orders Nos. 2 and 3, Section 927(b) allows contempt proceedings to follow in a federal district court.  In fact, it appears that the parties requested/agreed to, as much. [Doc. 1-1 at 71-72; Doc. 32 at 10.]  There is a statutory prerequisite, however, namely, that the deputy commissioner or BRB "certify the facts to the district court having jurisdiction in the place in which he is sitting . . . ."  33 U.S.C. § 927(b).  It is undisputed by the parties that the ALJ now stands in the place of the deputy commissioner and, therefore, could have certified the matter himself but did not; he remanded it to the deputy director until such time as the plaintiff complied with Order Nos. 2 and 3.  *See* 20 C.F.R. §§ 701.301(a)(7), 702.105); *see also Ingalls Shipbuilding v. Director, OWCP*, 519 U.S. 248, 268 (1997).

There are two reasons Section 927 cannot possibly support jurisdiction in this District Court.  First, the issue of the plaintiff's refusal to produce medical information was never certified to this or any other district court, as the Section requires.  33 U.S.C. § 927(b). But, the plaintiff seems to beg, as a matter of equity or common sense, that the Court look past this procedural detail and consider a contempt matter it theoretically has jurisdiction to entertain, if only certified properly.  But, even if the Court was inclined to take the plaintiff's invitation in this way, there is a second problem.   The District of South Carolina is the wrong district.  As emphasized, any certification is to be made "to the district court having jurisdiction in the place in which he is sitting."  33 U.S.C. §

927(b).  It appears undisputed that ALJ Sarno sits in the Eastern District of Virginia. [Doc. 1-1 at 7.] The plaintiff has not offered any response or objection.

In fact, taking the plaintiff's point, regarding jurisdiction under Section 927, to its logical conclusion, the plaintiff's own argument would absolutely bar any consideration of the present claim by this Court.  More specifically, if Section 927 allows for district court review of allegedly *ultra vires* sanction orders of an ALJ, as argued by the plaintiff, even where no certification is made, then Section 927 represents the exclusive procedural method.  *See Maxon Marine*, 39 F.3d at 146 ("[W]hen a statute specifies a procedure for obtaining judicial review of a federal agency's actions, that procedure normally is exclusive, even if the statute does not say that the procedure is exclusive . . ."); *see also Thunder Basin Coal*, 114 S. Ct. at 776.  And, that procedure only grants jurisdiction in the district court where the ALJ sits.   Which is not here.  On this basis, and pursuant to the plaintiff's own argument, this Court would be without jurisdiction under Section 927.

So Section 927 on its own can offer no jurisdictional basis for this Court to hear the matter.  As far as the Court can determine, the plaintiff nowhere argues that the Eastern District of Virginia would not indeed be the proper forum for any certified contempt question.

But, the plaintiff seems to imply that, even were the Court unable to hear the substantive question directly, certified pursuant to Section 927, the Court still somehow has jurisdiction to *declare* that the substantive question should have been certified

13

pursuant to Section 927 and the ALJ's actions *ultra vires*. [Doc. 32 at 18.]  This is clever, if still ineffective.  It is well established, that the Declaratory Judgment Act, 28 U.S.C. § 2201, is not itself a source of jurisdiction; it only provides a remedy. *See CGM, LLC v. BellSouth Telecom., Inc*., 664 F.3d 46, 55 (4th Cir. 2011).  More critically, the Fourth Circuit has said that "[a] request for declaratory relief is barred to the same extent that the claim for substantive relief on which it is based would be barred." *Id.*  The plaintiff's invitation, here, would work precisely the type of strange magic this axiom seeks to avoid:  that the Court would review the propriety of the ALJ's conduct in failing to certify a type of question, which could not have been certified to this Court in the first instance. That analysis would, in part, encompass some consideration of the underlying facts – to wit, that orders had been disobeyed such that certification would be required.

Not only would such a declaration jurisdictionally usurp the administrative authority to certify the question in proper order, it would represent a kind of preemptive advisory opinion for the district court to which the certification would ultimately go.  The Court is not unaware that there is some distinction between the question of whether the ALJ *should* have certified the contempt issue and the question of whether there has actually been any contempt to sanction.  But, even a cursory reading of the present briefs reveals the overlap.  The parties cannot help but necessarily argue the merits – whether the plaintiff is required to produce the medical information.  A declaration of this Court that the ALJ was wrong will include considerations and findings that begin to impede the ultimate issue – must the plaintiff release the records?

14

The undersigned is not of the view that it has subject matter jurisdiction, under Section 927, in the absence of any certification, or pursuant to any construction of the Declaratory Judgment Act.  There is no precedent that would suggest as much.   In fact, the Court does not see any statutorily prescribed method by which the Court could exercise jurisdiction over the case.  The plaintiff suggests that he is entitled to a prompt administrative decision in a way that would justify looking beyond the procedural mechanics of Section 927. [See Doc. 32 at 18.] Courts have rejected precisely this sort of rationalization.  *See Maxon Marine*, 39 F.3d at 146 ("There is no Speedy Administrative Proceeding Act. But delay is not a valid ground for bypassing the procedures established by Congress for obtaining judicial review of agency action . . . .")

But, to the extent any district court, the Eastern District of Virginia or otherwise, has jurisdiction to review the conduct of the ALJ as requested, it seems that it would have to be pursuant to Section 927, for all the same reasons.    The alternative view would be that the LHWCA prescribes no specific procedure for such review and that the propriety of judicial review of the administrative orders at issue turns on their finality under 5 U.S.C. § 704, discussed in more detail below.

The Court would try to be more clear.  "[O]ften, as in the Longshore and Harbor Workers' Compensation Act, the prescribed procedure is limited to a subset of orders, regulations, or other actions by the agency [to wit, Section 927(b)].  When that is so, a person aggrieved by agency action ***that is not subject to the special procedure can****, if the action is final, ripe, and otherwise appropriate for judicial review*, *obtain*

15

*review by filing a suit for injunctive or declaratory relief in federal district court under the general federal-question statute*, 28 U.S.C. § 1331." *Maxon Marine*, 39 F.3d at 146 (emphasis added); *see* 5 U.S.C. § 704; *Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967). In other words, 5 U.S.C. § 704 contemplates a kind of "nonstatutory" review even where judicial review is not authorized by a statute specifically prescribing the procedure. *See Maxon Marine*, 39 F.3d at 146. Section 704 states: "Agency action made reviewable by statute and *final agency action for which there is no other adequate remedy* in a court are subject to judicial review." 5 U.S.C. § 704 (emphasis added).

Said differently, if the district court concludes that Section 927 does not provide the exclusive jurisdictional procedure for challenges to an ALJ's failure to certify a contempt question, then the plaintiff would presumably seek judicial review under Section 704, if he could demonstrate that the relevant Orders of the ALJ constituted a "final" and "ripe" administrative action. 5 U.S.C. § 704.

But, review under Section 704 would produce the exact same paradoxical result described above: the Court would declare improper a failure by the ALJ to certify the very question the Court, itself, could not consider. This does not seem permissible either.

Out of an abundance of caution, though, the Court will discuss whether such "nonstatutory" review is available here, in this case, for the presence of some final and ripe administrative decision. The Court, however, will consider such issue in conjunction with the defendants' arguments concerning exhaustion, which are related if

16

not exactly the same.

## II.    Exhaustion and Nonstatutory Judicial Review of Agency Action

The defendants argue that the plaintiff's lawsuit is improper because he has failed to exhaust his administrative remedies by not appealing to the BRB, either, properly or at all, Pre-hearing Orders Nos. 2-4.   The defendants contend that the plaintiff failed to timely file an appeal of Pre-hearing Orders Nos. 2 and 3 to the U. S. Fourth Circuit and by not appealing Pre-hearing Order No. 4 to the Benefits Review Board.   The defendants offer that an appeal of the ALJ's remand "sanction" could have been effectively made to the BRB, in light of the BRB's previous decision in *Olsen v. AAA Machine Shop, Inc.*, No. 02-0612, 2003 WL 26100022 (Benefits Review Board, June 4, 2003).  There is some logic to the defendants' appeal.  The plaintiff plainly had administrative avenues he did not pursue.

But, the Court thinks the argument may be wrong in nomenclature.   As the plaintiff contends, there is no prescribed exhaustion requirement anywhere identified for reviewing an ALJ's failure to certify a contempt question.   Instead, it seems that the matter falls to Section 704 for guidance as to the propriety of judicial review (assuming Section 927 does not apply).  Instead of an exhaustion one, Section 704 imposes a kind of "finality" requirement on judicial review of agency action.  The United States Supreme Court has specifically stated "the judicial doctrine of exhaustion of administrative remedies is conceptually distinct from the doctrine of finality."  *Darby v. Cisneros*, 509 U.S. 137, 144 (1993).  "Finality and exhaustion are particularly difficult to distinguish.

17

Most cases can be resolved as easily through use of either of the two doctrines. If the petitioner has not yet exhausted an available administrative remedy, the agency's action is not yet final." *American Airlines, Inc. v. Herman*, 176 F.3d 283, 287 (5th Cir. 1999) (citation and quotation omitted).

By its language, Section 704, specifies that a "preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the **final agency action**." 5 U.S.C. § 704 (emphasis added). The statute continues: "Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined [a request] for any form of reconsideration . . ." *Id*.

"Agency action" is defined by the APA as including "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). "'Order' means the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making but including licensing." 5 U.S.C. § 551(6); *see Federal Trade Comm'n v. Standard Oil Co. of Calif.*, 449 U.S. 232, 238 n. 7 (1980). As a general matter, two conditions must be satisfied for an agency action to be "final": First, the action must mark the "'consummation'" of the agency's decisionmaking process[ ]— it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which "'rights or obligations have been determined,'" or from which "'legal consequences will flow . . . .'" *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (quoting

18

*Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103 (1948)).

On the other hand, the United States Supreme Court has defined a non-final agency order as one that "'does not itself adversely affect complainant but only affects his rights adversely on the contingency of future administrative action.'" *American Airlines, Inc.*, 176 F.3d at 287 *(quoting Rochester Tel. Corp. v. United States*, 307 U.S. 125, 130 (1939)). Under the APA, agency action that is merely "preliminary, procedural, or intermediate" is subject to judicial review at the termination of the proceeding in which the interlocutory ruling is made. 5 U.S.C. § 704; *F.T.C. v. Standard Oil Co. of Cal.*, 449 U.S. 232, 245 (1980).

At least one circuit court of appeals has concluded that agency orders, like the one in this case, which remand "for further proceedings are not final orders subject to judicial review." *American Airlines, Inc.*, 176 F.3d at 287; *Newpark Shipbuilding & Repair, Inc. v. Roundtree*, 723 F.2d 399, 400 (5th Cir.) (en banc) (the required finality for reviewability of order of Benefits Review Board under LHWCA follows "the contours of the finality-requirement under 28 U.S.C. § 1291 for appealability of decisions of the district courts"). And, the above analysis applied to the present case would begin to suggest a similar conclusion. The ALJ's orders "did not decide the merits" of the plaintiff's compensation claim. *See American Airlines, Inc.*, 176 F.3d at 287. Neither did it "complete the administrative proceedings, nor was it meant to do so." *Id*.

But, the undersigned believes the ALJ's Pre-hearing Order No. 4 would likely be reviewable under what is known as the "collateral order doctrine." Again, that Order

19

remanded the plaintiff's entire case "to the District Director until such time as the parties notify the District Director that: 1) Claimant's deposition has been taken; and 2) Claimant and his attorney have complied with my pre-hearing Orders #2 and #3." (Compl. Ex. 6 at 1-2.)

While the finality principle states that parties can only appeal fully resolved cases, the "collateral order doctrine" is narrowly framed to allow the appeal of some non-final orders that have such a final and important effect that reviewing courts should treat them as final orders. *Carolina Power and Light Co. v. U.S. Dept. of Labor*, 43 F.3d 912, 916 (4th Cir. 1995). It is well-settled that these requirements of the collateral order doctrine apply not only to judicial decisions, but also to appeals from executive agency action. *See F.T.C. v. Standard Oil of California*, 449 U.S. 232, 246-47 (1980) (applying collateral order elements to a decision of the FTC).

The Fourth Circuit has held that orders fall within the collateral order exception only if the order (1) conclusively determines the question in the trial court; (2) resolves an important question independent of the subject matter of the litigation; (3) is effectively unreviewable on appeal from a final judgment or so important that review should not wait upon final judgment; and (4) presents a serious and unsettled question upon appeal. *See Carolina Power and Light Co. v. U.S. Dept. of Labor*, 43 F.3d 912, 916 (4th Cir. 1995); *MDK, Inc. v. Mike's Train House, Inc.*, 27 F.3d 116, 120 (4th Cir.1994). The Fourth Circuit has suggested that the fourth element may not be determinative where the others have been established. *Id*.

The issue of whether the ALJ can effectively sanction the plaintiff by remanding the case and making his further adjudication conditional on compliance with previous orders is a question entirely collateral of whether the plaintiff is owed compensation under the LHWCA.  And, it is possible that the final compensation decision might be resolved without ever answering the procedural one, which would have already caused him to produce the medical information.  Importantly, the plaintiff might actually and ultimately prevail on his compensation claim and then have no reason at all to even appeal the alleged "sanction" of the ALJ, which would have already been served in production of the medical records.

Truthfully, it is a close call.  But, it is worth noting that the propriety of an ALJ's contempt sanction under Section 927 was specifically characterized as a "collateral order" in the BRB's *Olsen* decision, for purposes of granting administrative appellate review of a non-final ALJ order.  *See Olsen*, No. 02-0612, 2003 WL 26100022, at *3. For their own purposes, the defendants have analogized the procedural posture of the ALJ's attempted sanction in Olsen to the alleged sanction here.  So it would seem dubious for them to claim that the analysis should be significantly different.

As an alternative to the undersigned's recommendation that there exists no jurisdiction for the plaintiff's claims, the district court might make judicial review of them, pursuant to Section 704 and Supreme Court precedent, as a non-final but "collateral

order." This alternative does not come with undersigned's strongest confidence.[2]

In the event that the district court accepts this alternative recommendation, the undersigned would not agree with the defendants that the plaintiff has either failed to state a proper claim for declaratory judgment or for mandamus relief, pursuant to the *In re First Federal Sav. & Loan Ass'n (First Federal Sav. & Loan Ass'n v. Baker)*, 860 F.2d 135, 140 (4th Cir. 1988), considerations. The Court has considered those arguments and is unpersuaded.

To summarize:

1.    The Court does not believe that jurisdiction exists in this Court to review the ALJ's Orders pursuant to 33 U.S.C. § 927, where no certification to this Court has been made pursuant to that statute.

2.    To the extent judicial review of the ALJ's Orders is, however, permissible, pursuant to 33 U.S.C. § 927, without certification, jurisdiction would lie in the Eastern District of Virginia or elsewhere, and not here.

_____

[2]   The Court, however, would not recommend, even in the alternative, that the narrow and severe exception, expressed in *Leedom v. Kyne*, 358 U.S. 184 (1958), applies. That doctrine permits judicial intervention — even when the relevant statutory language precludes jurisdiction — when an agency exceeds the scope of its delegated authority or violates a clear statutory mandate. Under *Kyne*, access to the courts is accorded only if the agency's interpretation "is infused with error which is of a summa or magna quality as contraposed to decisions which are simply cum error. Only the egregious error melds the [agency's] decision into justiciability. Lesser malignancies thwart the jurisdiction of the courts." *United States v. Feaster*, 410 F.2d 1354, 1368 (5th Cir.1969). And, it is properly invoked only where the absence of federal court jurisdiction over an agency action "would wholly deprive" the aggrieved party "of a meaningful and adequate means of vindicating its statutory rights." *Bd. of Governors, Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991); *Long Term Care Partners, LLC v. U.S.*, 516 F.3d 225, 233 (4th Cir. 2008). It cannot be said that the plaintiff is "wholly deprived" of an adequate means of vindicating his rights. As discussed, the plaintiff has a reasonably likely appeal to the BRB available to him pursuant to *Olsen*. Regardless, whatever overreach the ALJ may have committed in Pre-hearing Order No. 4, it does not seem to rise to the type of misconduct *Kyne* is intended to vindicate.

3.      In the alternative, if 33 U.S.C. § 927 does not provide the express procedure for challenging the ALJ's Orders, without certification, jurisdiction for judicial review of such Orders may lie pursuant to 5 U.S.C. § 704 and the "collateral order doctrine."

4.      The Court would not recommend any dismissal of the causes of action for a failure to plausibly state them, in accord with governing case law.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the defendants' motions to dismiss [Doc. 19, 28] be GRANTED and all claims dismissed for lack of subject matter jurisdiction.

IT IS SO RECOMMENDED.

s/Bruce Howe  Hendricks
United States Magistrate Judge

January 31, 2014
Charleston, South Carolina

23

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).